Good morning. Good morning, Your Honors. May it please the Court, I am truly troubled to say that there is only half of appellants defending Greenwich Insurance Company. Your Honors, this appeals to all, whether they are with a duty to defend an underlying wage and hour class statute brought under an employment practices liability policy issued by Greenwich Insurance Company. It is not disputed that the only claims actually asserted in the underlying class statute were violations of the California Labor Code, which is regulated by your wage and hour issues, as well as in the Offices of Professions Code, Section 17200, and private attorney in general, excuse me, private attorney in general, have complained. They're all premised on the labor code violations. It also cannot be reasonably disputed that none of those wage and hour labor code claims were one of the 13 enumerated employment lawful acts potentially covered by the insurance policy here. In fact, the only argument that was made at the trial court level as to whether, as far as those labor code violations violated in our wage enumerated lawful acts was that there was a breach, arguably, of an implied employment contract. That argument has not been reasserted by PHP here on appeal, and it is clearly wrong. Because what an implied contract is, is an agreement between two individuals, implied by their conduct, not, as PHP argued at the district court level, implying labor code violations into a contract for employment. In addition, here the district court found, all but the labor code section 226 claims were barred by the wage and hour exclusion and the creditors policy, which is exclusion H. Our view is that the exclusion also applied to that claim, but you don't need to reach that issue because if it's not one of the enumerated lawful employment acts, there's no coverage, it doesn't meet the insuring grant. So, again, to this background, it's not surprising that the district court determined that there was no indemnity obligation on behalf of... It's a potential claim, because that's what we're really concerned about. What is surprising is that, given that there was no guard for any of the claims actually asserted, the district court here determined that there was a duty to defend because the underlying complaints will suggest that there is a potential for a covered claim for harassment or discrimination. We would submit your honor, so while the duty to defend in California is broad, it's clearly not unlimited, we don't dispute that you actually have to assert... The work potential is pretty broad in itself. The work potential is broad, but again, the duty to defend is not unlimited. If the claim for harassment... But here, don't we have discrimination where Vietnamese workers require to use American names and there was targeting of Vietnamese immigrants for exploitation in this case? Your honor, what the underlying complaint alleges is a class action lawsuit, again, all focused on labor compromises. It did have allegations that this particular MDHP hired or could hire both Vietnamese immigrants and not just Vietnamese immigrants, but recent college graduates because they were unsophisticated in California labor laws. And there's a reason in the context of the class action complaint for that allegation. The reason was, your honor, is that in order to show or defend specificity to it, the class action violation of the labor competition was that it wasn't willful. And so in the context of the class action, it made sense for there to be an allegation showing that they willfully violated those laws by targeting and not just Vietnamese immigrants, but also recent college graduates. But that doesn't matter if they alleged a potential claim for discrimination and it was also in the context of another claim. Right, but your honor, they did not allege a claim for discrimination here. Well, tell me why, because I'm trying to get my head around the degree of specificity you contend is necessary for a potential claim. Why isn't this enough? It's not enough, your honor. Here we have no idea in terms of it is alleged that as part of their allegation that this defendant exerted control over his employees so that they were actual employees, not independent contractors, which would make them non-exempt under labor codes. He asked them or he required some people with difficult names, Vietnamese names, to change their names and use Americanized names. What we don't know, what's not in the complaint is what about any of the some individuals that were required to do that. And neither of the class representatives said that they were required to do that. What was not in there is that they felt that was improper or that they disagreed with it. And it is important, your honor, because under California law, we are not allowed to speculate as to unplanned allegations, even if those allegations might normally be expected to be included with the allegations that are planned. So here there was an allegation that some people were required to change their names, including the allegations that they were upset by that or that that was improper. What about the point that you just made that there's an allegation that Vietnamese people were identified and been targeted for these labor practices because they were perceived to ignore their labor rights. And in addition to that, if they were made to change their names, why wouldn't that amount to a claim of discrimination based on national origin? Your honor, I mean... A potential claim based on... Right. The reason it would not, your honor, is here there's no allegation that Vietnamese who were discriminated against because of their national origin, but they were hired, they were demoted or given a less desirable job or had special requirements. They were treated the same as everybody else. Here the allegation was they were treated as the exempt employee, these workers of labor go where they should have been, not as employees and receive their appropriate meal, breath breaks, and hourly rate. Counsel, would you address the Calderes case, please? Yes, your honor. That's a district court case, obviously, but... Correct, your honor. It's starting to be pretty persuasive. Your honor, Calderes actually supports a finding of no duty to defend here, which is in Calderes, although the court viewed that the wage and hour solution in the attack case did not apply to the CLC-226 claim. What it did find is that there was no coverage because none of these, because the labor code provisions did not... Excuse me, I lost my train of thought. But what the Calderes court found, that none of these 13 enumerated wrongful employment acts were satisfied, that there was, therefore, no coverage. As to the 226 claim and the scope of the wage and hour exclusion, I would submit that the exclusion in the Greenwich policy is much broader than the exclusion in the Calderes case. And the reason for that, your honor, is that unlike in Calderes, which our coverage for plain or violations of the FSLA or similar state laws, our policy, Exclusion A, Exclusion A, Exclusion B, provides that coverage is not available for any claim based upon arising out of, directly or indirectly resulting from, the consequence of, or in any way involving, the bail-in barriers, the FSLA or any similar laws. It seems to me that 226 is irrelevant here on whether it excludes the discrimination and harassment, on whether it's an exclusion. The district court said 226 claims are not excluded. But that doesn't matter because if it's not a wrongful act, which the district court said, then the fact that it's not excluded is completely irrelevant. The issue is whether or not discrimination and harassment is a potential claim, and then you would ask whether or not that's excluded. But the fact that 226 might not be excluded under 4H doesn't contaminate discrimination and harassment because the 226 claim is not a wrongful act. I just have no problem with the district court saying that. I agree with Your Honor. I mean, if it's, you don't, if it's Exclusion A, if you don't mind that the security agreement is triggered in the first place because there wasn't a wrongful employment act, which is the case as it's a certainly all-favorable code, and things are actually asserted, there may be a claim for harassment or discrimination is actually asserted, and I would refer the court to the upper deck decisions and the context matters a lot here. We need to look at what they were actually asserting. They were actually asserting painful labor code violations, and it would have to materially change their complaint to revamp it in the alleged claim for discrimination or harassment. Going back to Exclusion A, given the broad introductory language, I would submit that Exclusion H, if we're going to accept or say the argument that there were potential claims for harassment or discrimination, that Exclusion H would mark coverage for those claims. You didn't argue that until you replied for insertion, right? We did insert that in the polygraph, yes, Your Honor. Okay, but it wasn't in your opening statement. No, that's correct, Your Honor. Your opening brief was all about whether or not discrimination and harassment are potential claims. Yes, we did raise Exclusion H, and it's a broad application in the rising doubt of language. But you didn't tie it to discrimination. No, that was in response to the arguments. Until the last page of your reply brief. It was the last page of your statement. Okay, I'm sorry. Only one last point, so I'm going to trust you with my time. Was there a response to anything that was in the answering brief? Yes, Your Honor. I mean, in the answering brief, they asserted that the 226, the last part of there, in the answering brief, that Exclusion H didn't apply because of these potential claims for harassment and discrimination, in their view. If the Court has no further questions, I'm just going to bounce on my time real quick. All right. Thank you, Your Honor. Good morning. I'm going to give the place of the Court to Alex Berlin on behalf of Plaintiffs and Appealees of PHP. The only issue before the Court today is, I think we're all in agreement, is whether the facts alleged in the complaint triggered a duty to defend. And all I have to establish on behalf of my clients is mere possibility of coverage. There has to be enough to at least trigger coverage. I mean, just straight facts aren't enough to trigger coverage. Well, we have to look at the coverage grant and then look at the facts in context. Greenwich Insurance sold my clients a policy that says we will cover loss arising from employment claims for a wrongful employment act and then define wrongful employment act. Discrimination is defined specifically as the elastification because of age or national origin. That's a policy they sold. Right. Now I've got an alibi. Where in the complaint did you allege discrimination because of race or national origin? Alleged discrimination. Defendants purposefully hire recent immigrant workers to properly take advantage of their lack of knowledge regarding labor and employment rights. PHP conducts its business primarily in the Vietnamese-speaking communities of Santa Clara. Plaintiffs and the class members are predominantly Vietnamese-speaking individuals. Some of the employees are recent immigrants from Vietnam. Yes, yes. National origin. If you were doing a Title VII action, would that mean it has to be a claim under Title VII? Well, I don't know, Your Honor. I'm not a Title VII. You know, under NYSERDA law or California law, you don't have to allege all the elements of a claim to assert a potential claim, right? That's absolutely right, Your Honor. I mean, you had to say something about it was because that they were treated differently or discriminated against. The aura of discrimination has to be in there somewhere, doesn't it? Just saying that we're mostly Vietnamese, is that enough? In federal pleading, you want to get away from legal conclusions to facts. I think the plaintiffs in the underlying case did. They gave us three paragraphs of very specific facts. Employees who were not available to assist customers were later berated by management. It was berated on positive. Are you telling me that yelling at employees is a cause of action? It can be, certainly. I'm not a white challenger. At least you can't afford it. But that was in all fairness. That was in conjunction with the wage claim because really, in context, it was part of the allegation that they were not allowed to take the breaks that they were entitled to. They weren't available because they were taking their breaks and they were berated because they weren't being used. So you're being berated for exercising your rights under California law? I don't understand. That was in connection with the wage claim as opposed to expiration claim. Another claim they made specifically, defendants also required, not optional, required that some employees change their Vietnamese names to American names. They required. That doesn't indicate this was an optional. And you could combine that with the allegations of focusing on Vietnamese or Eastern immigrants to exert these employment practices. You could combine the name change with that to argue that there's a potential discrimination claim. Well, that's precisely what Judge Freeman did in her decision. On the name change issue, the Al-Hakim, which is a Ninth Circuit decision. All right. Well, in that case, the learned judge held a calling. Excuse me if I mispronounce it. Mamdouh Manning, instead of his first name, could state a cause of action. So here, in my case, we have a specific allegation that folks of Vietnamese heritage are required, mandatory, to use Americanized names. And, again, whether, where's my colleague? Had we gotten a defense from Greenwich, we would have happily disputed these issues. Maybe there weren't enough facts. Maybe we could have moved for summary judgment. Maybe plaintiff would have ended his complaint. Maybe there would have been a motion to dismiss. We never got to do any of that because BHP and my clients are here today. They're a small business. And they got here with a class action lawsuit. And their defense lawyer says, well, it's about 250 grand just to get through class cert. And they said, quote, quote, quote, unsub. That's the reason the duty to defend as a courts of field is as important as the duty to indemnify. My clients didn't agree with any of this. They wanted to fight. They wanted to challenge us. It was only a handful of employees, I think 30-odd. Class certification is not a state of complaint. It could have been challenged. We never got that opportunity because you didn't get a duty to defend. Getting back to the discrimination segment, you're really not alleging in this. It was not alleged against your client in this complaint that the Vietnamese employees accepted the name change aspect were treated any differently from the other employees who were not paid overtime. So they weren't. The employment practice was not applied to them only as opposed to non-Vietnamese employees. With all respect, and in respect to my colleague, if you think of an employer that only goes after a protected class, only hires, pick your victim, women, blacks, Jews, recent immigrants, and then says, well, I'm treating everybody the same, I don't think it works that way. The issue is, was someone discriminated against to support a claim based on national origin? And here we have the word Vietnam and Vietnamese all throughout this complaint. And we have specific things that they were doing. You talk back. You get berated. You want to use your name. You can't. You've got to use an American name to take advantage of their lack of knowledge regarding labor and employment. Take advantage. That's a derogatory term. That's discrimination. That's what all these laws are designed to stop. And that's what my clients were accused of doing. And we never got a chance to defend ourselves because we never got a defense. And I understand you've never asserted that discrimination and harassment was a 226 claim, right? No, Your Honor. We view our route and duty to defend as two separate and complete paths. If the word Vietnam did not appear in this complaint, we feel it's covered. And the exclusion doesn't apply to that one claim. You can get damages under 226. That was our one thesis. What's your thesis? So the 226 was the applied contract? It was. Now Judge Freeman, in her infinite wisdom, chose to pick up on our second track, which was just there's enough facts here to allege discrimination. And harassment. And I think your point is well taken. If you go down this path, the 226 is almost irrelevant. But we firmly believe that both paths to a duty to defend were correct. And I'm not giving up on the first one. It just seems that, since Judge Freeman went this route, that's become most of the briefing that's been addressed on that issue, which is why I'm addressing it here. Kelsey, you heard Mr. Tuohy's response to my question about cattle dairies. Do you want to respond to that? Yes, Your Honor. I think it's very important to point out that the cattle dairies decision, granted a district court decision, was off the books and published and available to anybody with a Lexis or Whistler account years before Greenwich came to California and sold its policy to my client. So if there was any debate as to whether the words similar, F-L-S-A, cover all of the California labor duty provisions, they know or should have known that it did not. So I think they're arguing that, well, we respectfully disagree with the cattle dairies court, and it's a little bit disingenuous. The FSLA, going back to geometry, uses a certain circle of labor protections. And California is much different. It has some of the same, but a lot of different things. For example, wage tax. There's no similar provision in the FSLA regarding wage tax. The term wage tax does not appear in the FSLA. Therefore, it is not similar. This is just basic common usage of any of this language. And because this is an exclusion, we have to interpret that against each other. We have to interpret it their own. There are plenty of cases, including their Apple case, where they say any is broader. Similar is narrower. They chose to go similar. I'm not making this up. Do you want to ask a question, too, Mike? I'll get around to it. If there's no further questions, Your Honor, I can spin off the briefs. All right. Thank you. This is Gary Fato. I'll just bring a couple points to your Honor. Grange does not dispute that it's impossible. Some of the class members had a discrimination or even harassment claim. That's a possibility. What is clear, though, is the claim that was made, sorry, of the wage and hour claims. Some of those class members have separately sued for discrimination. That's a possibility. But the context matters here. The key, though, is potential viability. But there was no, I would say that there was no potential for liability on discrimination or harassment because those claims were not being asserted. Any elements, if you don't have the actual cause of action asserted in a complaint, in California law, would require that just elements of those claims be pledged. But that's the case that says the elements do not have to be pledged. I mean, I know around, it's either a Ninth Circuit case or a California case that said you do not have to proceed to elements because I was trying to understand what exactly it is you do have to do. I think what you do have to do is all of the allegations that support the claim that there was discrimination and that there was some sort of harm because of that discrimination here, that's not missing. Even if you might think that if somebody requires you to change their name, it's natural that there's some sort of harm element to that. Unless it's alleged, you can't assume that. What's the strongest case to support your argument that the elements have to be pledged? I think there's two cases I would refer the court to. One is the Sdoric decision, and the other is the Colley v. Flats. But what's the source of those cases, those Ninth Circuit cases? The district court decision. The district court decision. If you go to the Ninth Circuit cases, I would refer this court to both the Olympic Club and the other would be both. There's Microtech and Upper Deck. What is the absolutely strongest case you view? I believe Upper Deck, Your Honor, strongly supports our position that you need to have the dock. What Upper Deck court said was you need to connect the docks. If you don't have an actual claim, assert it. Okay, but I thought you said this is your strongest case, but the proposition that the elements must be pledged. Yes. Okay, so talking to the language in the Upper Deck, that you're relying on to say that the elements must be pledged. I don't know if the first elements are not in the case, except the docks, the potential claim, all the docks are connected, then you know they're asserting that claim, even though, or they could assert that claim, even though they didn't actually receive that cause of action. Okay, tell me the language that you're relying on for your connect the docks argument. I don't have that argument, but the phrase connect the docks does appear on two occasions in that decision, Your Honor. Thank you, counsel. Thank you. Any other questions? Thank you to both counsel for your helpful arguments in this case. The case just argued to be a submitted court decision by the court that completes our challenges for the morning. We are in recess until 9 a.m. tomorrow morning. Thank you.
judges: O'scannlain, Rawlinson, Vance